UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Walter O. Singh,

       Plaintiff,

       v.

The City of Minneapolis, Officer Linda S. Chaplin
(Badge # 001432) and Officer Michael P. McCarthy
(Badge #004520), acting in their individual capacities
as Minneapolis Police Officers,

       Defendants.

Civil No. 05-2888 (JMR/FLN)

**REPORT AND
RECOMMENDATION**

_____

*Pro Se* Plaintiff.
Greg Sautter, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 22, 2006, on Defendants City of Minneapolis, Officer Linda S. Chaplin and Officer Michael P. McCarthy's (hereinafter "City Defendants") Motion for Summary Judgment [#71]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that City Defendants' Motion for Summary Judgment [#71] be granted.

## I.   FINDINGS OF FACT

Plaintiff Walter O. Singh brought this action against the City Defendants under the Civil Rights Act contained in 42 U.S.C. §§ 1981, 1983, the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 *et seq.*, and various torts under state law. (*See* Compl.) Plaintiff's claims arise from his arrest at his employment at Abbott Northwestern Hospital. (*See* Compl.)

Officer Linda S. Chaplin and Officer Michael P. McCarthy ("Officer Defendants") were

dispatched to Abbott Northwestern.  (Sautter Aff., Ex. 4, Chaplin Dep., 7.)  Upon the arrival at the

hospital, the Officer Defendants spoke with Abbott Northwestern security, who called the police

after conducting an investigation involving Plaintiff and his sisters, Pamela Persaud and Indrani

Hanuman.  (Sautter Aff., Ex. 4, Chaplin Dep., 7.)  After speaking with security, Officer Chaplin

interviewed both Hanuman and Persaud.  (Sautter Aff., Ex. 4, Chaplin Dep., 7-8.)  Plaintiff's sisters

reported to Officer Chaplin  that Plaintiff told Persaud that Hanuman's son slashed his tires and he

had a permit to carry a gun.  (Sautter Aff., Ex. 4, Chaplin Dep., .)  They also reported that after the

conversation with Persaud, Plaintiff went to the cafeteria where Hanuman works and told her that

he would kill her and he would have an alibi.  (Sautter Aff., Ex. 4, Chaplin Dep., 8.)

Based upon the information provided by the sisters, the Officer Defendants decided they had

sufficient probable cause to arrest Plaintiff.  (Sautter Aff., Ex. 4, Chaplin Dep., 10.)  An Abbott

Northwestern security employee retrieved Plaintiff and brought Plaintiff to a security office.

(Sautter Aff., Ex. 6, Singh Dep., 71-74.)  In the security office, the Officer Defendants placed

Plaintiff under arrest.  (Sautter Aff., Ex. 6, Singh Dep., 71-74.)  During the arrest, the Officer

Defendants handcuffed Plaintiff and pushed him into the hallway and toward the squad car.  (Sautter

Aff., Ex. 6, Singh Dep., 76, 79.)  As the Officer Defendants arrested the Plaintiff, they asked for his

gun and Plaintiff told the Officer Defendants that it was at home.   (Sautter Aff., Ex. 6, Singh Dep.,

76.)  When the Officers put the Plaintiff in the squad car, the Officer Defendants push him into the

car, which caused him to fall into the footwell of the backseat.  (Sautter Aff., Ex. 6, Singh Dep., 79-

80.)  Plaintiff complained of pain and an inability to get up into the seat.  (Sautter Aff., Ex. 6, Singh

Dep., 80-81.)  The Officer Defendants refused to help the Plaintiff get off the floor of the vehicle

and into the seat.  (Sautter Aff., Ex. 6, Singh Dep., 81.)  Eventually, the Plaintiff employed a move

that he learned from a John Wayne film to get into the seat of the squad car.  (Sautter Aff., Ex. 6, Singh Dep., 81.)  During the trip to the jail, the Officer Defendants would not tell Plaintiff why he was under arrest.  (Sautter Aff., Ex. 6, Singh Dep., 81.)

While in the jail, the Plaintiff complained of pain to both his knee and hand.  (Sautter Aff., Ex. 7, Singh Dep., 104.)  Plaintiff was not provided medical attention while in jail.  Upon release from jail, Plaintiff went to the emergency room and was treated for a sprained right index finger and pain in his knee.  (Sautter Aff., Ex. 9, Medical Records for Plaintiff, 10.)  Prior to the incident, Plaintiff had previously complained of pain in his knee on September 4, 2005.  (Sautter Aff., Ex. 9, Medical Records for Plaintiff, 7-8.)  The evaluation of Plaintiff's index finger indicated "no vascular compromise" and "tendon function normal."  (Sautter Aff., Ex. 9, Medical Records for Plaintiff, 10.)

## II.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).   Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party."  Id. at 250.

When determining whether to grant a motion for summary judgment, a court must view all

of the facts in the light most favorable to the non-moving party and give the non-moving party the

benefit of all reasonable inferences that can be drawn from those facts.  Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  When the moving party brings forth a proper

summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of

the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided

in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R.

Civ.P. 56(e); see Anderson, 477 U.S. at 256 ("[A] party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth

specific facts showing that there is a genuine issue for trial."); see also Celotex Corp. v. Catrett, 477

U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any

of the kinds of evidentiary materials listed in Rule 56(c).")

### III.   LEGAL ANALYSIS

**A.     The Officer Defendants Are Entitled To Immunity Because Plaintiff Has Not Established A Constitutional Injury.**

Plaintiff's Federal Constitutional claims are brought under the Fourth and Fourteenth

Amendments and arise from his warrantless arrest, the alleged abuse in route to the jail, the failure

to provide medical attention, and racial discrimination.  Plaintiff's State law claims stem from the

same incident and alleged both violations under the Minnesota Human Rights Act and the common

law torts of assault, battery, false imprisonment and false arrest.  The Officer Defendants are entitled

to qualified immunity on the Federal law claims and official immunity on the State law claims

because Plaintiff's evidence taken in the light most favorable to the Plaintiff fails to establish that

the Officers knowingly violated any of Plaintiff's rights.

**1.      The Officer Defendants Are Entitled To Qualified Immunity On The Federal Constitutional Claims Under the Civil Rights Act.**

The defendants assert the affirmative defense of qualified immunity to Plaintiff's Federal Constitutional claims under the Civil Rights Act . "Qualified immunity shields government actors from suit when, 'a reasonable officer could have believed [the challenged act] to be lawful, in light of clearly established law and the information the [defendant]s possessed.'" *Weiler v. Purkett*, 137 F.3d 1047, 1049 (8th Cir. March 2, 1998) (en banc) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). To determine whether an officer loses qualified immunity, a court must perform a two-prong analysis. *Weiler*, 137 F.3d at 1050. First, the court must determine if the plaintiff alleged a deprivation of constitutional magnitude. *Id*. Second, if the plaintiff has alleged such a deprivation, the court must determine if the right was so clearly established that a reasonable officer would have known his or her conduct violated the Constitution at the time of the act. *Id*. Plaintiff's Federal Constitutional claims arise from his warrantless arrest, the alleged abuse in route to the jail, the failure to provide medical attention, and racial discrimination.

The Plaintiff goes into great detail to establish that the incidents as described by his sisters never happened,[1] however "[i]f the [officers] had probable cause, the arrests did not violate the Fourth Amendment and the [officers] are not liable." *Anderson v. Cass County, et al.*, 367 F.3d 741, 745 (8th Cir. 2004) (*citing Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir.1995)). In assessing whether probable cause existed for the warrantless arrest, a court must consider the totality of the circumstances and determine whether a "reasonably cautious police officer" would believe

---

[1] It appears that he was acquitted of the charges stemming from this incident

that the individual arrested has committed an offense. *Anderson*, 367 F.3d at 745. Furthermore, the Minnesota Rules of Criminal Procedure state that law enforcement may arrest a defendant for misdemeanor charges, if "it reasonably appears to the officer that the arrest or detention is necessary to prevent bodily harm to the accused or another ... ." Minn. R. Crim. P. 6.01, Subd. 1(1)(a). Here, Officer Chaplin received reports from both Hanuman and Persaud that Plaintiff had threatened Hanuman. Officer Chaplin believed these reports. These reports alone are enough to support probable cause for the arrest. When the Defendant Officers became aware of the fact that Plaintiff was in close proximity to Hanuman possessed a weapon, it reasonably appeared that his detention would be necessary to prevent bodily harm to Hanuman. It is not material that Plaintiff was ultimately not convicted of the charges stemming from the incident, the Court need only inquire whether the Defendant Officers reasonably believed that Plaintiff had committed an offense. Based upon the facts of the arrest in the light most favorable to the Plaintiff, the Court finds the Defendant Officers' belief to be reasonable and the arrest is supported by probable cause.

The Plaintiff alleges that he was pushed down the hallway of the hospital and pushed into the squad car. "A violation of [the right to be free from excessive force] will support a [Civil Rights] action, but not every push or shove by an officer violates the Fourth Amendment." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (*citing Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)). The Defendant Officers force is not excessive if "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994). In order for these pushing incidents to arise to a constitutional violation, the Plaintiff must show more than a *de minimis* injury. *Andrews*, 417 F.3d at 818. In *Andrews*, the plaintiff experienced "temporary and slight aggravation of pre-existing conditions." *Id*. Here, the Plaintiff has experienced the same

level of injury as the plaintiff in *Andrews*.  The Plaintiff complains of injury to a knee that had been similarly injured approximately one month earlier on September 4, 2005, and the injury to his hand that revealed no injury other than reported tenderness.  The injuries reported by Plaintiff are not sufficient to constitute a excessive force and a Constitutional violation.

Plaintiff also alleges a failure to provide medical treatment.  In the pre-trial setting, such a claim is governed by the Eighth Amendment's deliberate-indifference standard.  *Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006).  In order for a duty to provide medical care to arise under this standard, the Plaintiff must have an "objectively serious medical need ... [that must be] either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Id*. at 809.  Plaintiff's pain in his knee and hand does not constitute a serious medical need that implicates the Eighth Amendment and a duty to provide medical care; these injuries were *de minimis*, not serious.

Plaintiff brings a claim based upon racial discrimination under §1981 of the Civil Rights Act.  42 U.S.C. §1981.  Plaintiff must show that "the officers' actions were racially motivated by purposeful discrimination."  *Buffkins v. City of Omaha*, 922 F.2d 465, 468 (8th Cir. 1990).  However, there is no evidence for a trier of fact to conclude that the actions of the Defendant Officers were racially motivated.  Absent some evidence of racial motivation, Plaintiff's claim under §1981 must be dismissed.

Since the evidence taken in the light most favorable to the Plaintiff does not support a violation of constitutional magnitude, the Defendant Officers are entitled to qualified immunity on the Plaintiff's Federal law claims.  The Court must turn to the doctrine of official immunity on the Plaintiff's State law claims.

**2.      The Officer Defendants Are Entitled to Official Immunity on the State Law Claims.**

"Under Minnesota law, a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion." *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990) (*citing Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988)).   The duties of police officers requires the exercise of judgment or discretion. *Johnson*, 453 N.W.2d at 41.  The officers seek official immunity on the Plaintiff's state law claims, which arise from the warrantless arrest of Plaintiff, force used during the arrest, and failure to provide medical care.

The exception to official immunity exists if the officer commits a willful or malicious wrong. *Elwood*, 423 N.W.2d at 679.  For purposes of official immunity, willful and malicious are synonymous and are defined as "the intentional doing of a wrongful act without legal justification or excuse." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991).  To establish malice, Plaintiff must do more than allege malice; Plaintiff must present specific facts showing the officers intentionally acted wrongfully without legal justification or excuse.  *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. App. 1990).

The Court must determine whether a genuine issue of material fact exists regarding whether the officer's conduct constituted an intentional doing of a wrongful act.  In order to create a genuine issue of material fact, the Plaintiff must present specific facts, not just mere allegations.  The Court finds that Plaintiff has only provided allegations of malice without specific factual support.  Plaintiff's claims based upon the warrantless arrest of the Plaintiff must be dismissed because the officers had probable cause to arrest the Plaintiff.  *See supra*.  Plaintiff's claims based upon the excessive force must be dismissed because Plaintiff's injuries do  not support the assertion that the force used by the officers could be described as excessive.  *See supra*.  Lastly, Defendant Officers'

refusal to provide medical care is not a wrongful act under the circumstances alleged by the Plaintiff.

Plaintiff's claim under the MHRA asserts that the acts of the Defendant Officers were in reprisal for Plaintiff filing suit against other Minneapolis Police Officers.  Since the acts that comprise the alleged reprisal were not intentional wrongs without legal justification, the MHRA claims must fail as being subject to official immunity.

Since the evidence taken in the light most favorable to the Plaintiff does not support the proposition that the Defendant Officers acted wrongfully without legal justification or excuse, the Defendant Officers are entitled to official immunity on the Plaintiff's State law claims.

**B.      Plaintiff Has Failed To Show Any Policy or Custom To Impose Liability For A § 1983 Claim Against The City**.

Plaintiff also brings claims against the City of Minneapolis based upon a violation of Constitutional rights by units of local government under 42 U.S.C. §1983.  *See* 42 U.S.C. §1983. Section 1983 claims against units of local government cannot be based upon the actions of its employees and agents, but rather must be shown through a formal policy or informal custom. *Monell v. Dept of Soc. Serv.*, 436 U.S. 658, 694 (1978).  Plaintiff has not identified or provided any evidence for the existence of a formal policy or informal custom that has caused a deprivation of his constitutional rights.  Plaintiff bases his claim against the City upon allegations with no evidentiary support.  In support of its position that the City of Minneapolis does not have a policy or custom authorizing unconstitutional or other unlawful conduct, the Defendant City submits the affidavit of Police Chief Timothy Dolan. (See Dolan Aff.)  Therefore, Plaintiff's claim also fails because he has not provided any evidence for the trier of fact to conclude  that a formal policy or informal custom of the City Defendant caused the deprivation of his constitutional rights.

## IV.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that City Defendant's Motion for Summary Judgment [#71] be **GRANTED**.


DATED: September 18, 2007                          s/ *Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 5, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 5, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.